FEINBERG DAY KRAMER ALBERTI
LIM TONKOVICH & BELLOLI LLP
Robert F. Kramer (SBN 181706)
rkramer@feinday.com
M. Elizabeth Day (SBN 177125)
eday@feinday.com
David Alberti (SBN 220625)
dalberti@feinday.com
Russell S. Tonkovich (SBN 233280)
rtonkovich@feinday.com
Marc C. Belloli (SBN 244290)
mbelloli@feinday.com
Nicholas V. Martini (SBN 237687)
nmartini@feinday.com
Kate E. Hart (SBN 275121)
khart@feinday.com
Aidan M. Brewster (SBN 319691)
abrewster@feinday.com
1600 El Camino Real, Suite 280
Menlo Park, California 94025
Telephone:  (650) 618-4360
Facsimile:  (650) 618-4368

*Attorneys for Plaintiff*
*Polaris PowerLED Technologies, LLC*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| POLARIS POWERLED TECHNOLOGIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> VIZIO, INC., <br><br> Defendant. | Case No. 8:18-cv-01571-JVS (DFMx) <br><br> **PLAINTIFF POLARIS POWERLED TECHNOLOGIES, LLC'S OPENING CLAIM CONSTRUCTION BRIEF** <br><br> Hearing:   October 24, 2019 <br> Time:   3:00 p.m. <br> Crtrm:   10C <br> Judge:   Hon. James v. Selna |

# TABLE OF CONTENTS

I.     INTRODUCTION..................................................................................................1

II.    OVERVIEW OF THE '117 PATENT ................................................................2

III.   LEGAL STANDARDS........................................................................................6

IV.    ARGUMENT .......................................................................................................7

       A.    "Ambient Light" ........................................................................................7

       B.    "Configured To" ........................................................................................9

       C.    "Dark Level Bias" Terms.........................................................................11

             1.    "Dark Level Bias" Has Its Plain and Ordinary Meaning
                   Based on the Intrinsic Evidence ...................................................12

             2.    Another District Court, Polaris' Expert, and VIZIO's Expert
                   All Agree That "Dark Level Bias" Is Definite And Has Its
                   Plain and Ordinary Meaning.........................................................17

       D.    "The Brightness Control Signal Is Maintained Above a
             Predetermined Level When the Ambient Light Level Decreases to
             Approximately Zero"................................................................................20

       E.    "Overdrive Clamp Circuit" ......................................................................25

V.     CONCLUSION ..................................................................................................25

# TABLE OF AUTHORITIES

**CASES**

*BASF Corp. v. Johnson Matthey, Inc.,*
  875 F.3d 1360 (Fed. Cir. 2017) ...............................................................7, 16

*Core Wireless Licensing S.A.R.L. v. Apple Inc.,*
  899 F.3d 1356 (Fed. Cir. 2018) ....................................................................10

*Duraflame, Inc. v. Hearthmark, LLC,*
  2013 WL 594241 (N.D. Cal. Feb. 14, 2013) ................................................23

*Integra LifeSciences Corp. v. HyperBranch Medical Tech., Inc.,*
  2017 WL 3336274 (D. Del. Jul. 27, 2017) ...................................................23

*Int'l Bus. Machines v. The Priceline Group, Inc.,*
  2016 WL 6405824 (D. Del. Oct. 28, 2016)...................................................23

*Interval Licensing LLC v. AOL, Inc.,*
  766 F.3d 1364 (Fed. Cir. 2014) ................................................................7, 23

*Invitrogen Corp. v. Biocrest Mfg., L.P.,*
  424 F.3d 1374 (Fed. Cir. 2005) ......................................................................7

*Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.,*
  814 F.3d 1343 (Fed. Cir. 2016) ..................................................................6, 7

*Max Blu Techs., LLC v. Cinedigm Corp.,*
  2016 WL 3688801 (E.D. Tex. Jul. 12, 2016) ...............................................24

*Messer v. HO Sports Co. Inc.,*
  2007 WL 2011210 (D. Or. Jul. 9, 2007) ......................................................24

*Nautilus, Inc. v. Biosig Instruments, Inc.,*
  572 US 898 (2014) ...........................................................................................7

*Phillips v. AWH Corp.,*
  415 F.3d 1303 (Fed. Cir. 2005) ..............................................................6, 7, 8

*Polaris PowerLED Techs., Inc. v. Samsung Elecs. Am., Inc. et al.,*
  Civil Action No. 2:17-cv-00715-JRG (E.D. Tex.) ................................ passim

*Radware Ltd. v. A10 Networks, Inc.,*
  2014 WL 1572644 (N.D. Cal. April 18, 2014) .............................................10

*SIPCO, LLC v. Abb, Inc.,*
  2012 WL 3112302 (E.D. Tex. July 20, 2012)...............................................10

*Thomas Swan & Co. Ltd. v. Finisar Corp.,*
  2014 WL 2885296 (E.D. Tex. Jun. 25, 2014) ..............................................24

*Twin Rivers Eng'g, Inc. v. Fieldpiece Instruments, Inc.*,
   2018 WL 1583382 (C.D. Cal. 2018) ..................................................................24

## I.    INTRODUCTION

Plaintiff Polaris PowerLED Technologies, LLC ("Polaris") has filed suit against Defendant VIZIO, Inc. ("VIZIO") for infringement of U.S. Patent No. 8,223,117 ("'117 patent") and U.S. Patent No. 7,239,087 ("'087 patent").  All ten terms identified for construction by the parties are from the '117 patent.  The '117 patent claims novel methods and apparatuses for controlling the brightness of a display based on a user signal, a sensing signal from a light sensor that is indicative of the ambient light level, and a dark level bias value applied by the system.

Both patents-in-suit were developed by engineers at Microsemi Corporation ("Microsemi"), a large microprocessor and electronic components company with over a billion dollars in revenue that is headquartered in this District.  Microsemi was involved in the formation of Polaris in 2017.  The Chief Executive Officer of Polaris is the former Chief Operating Officer of Microsemi.  Further, the Chief Technology Officer of Polaris, Bruce Ferguson, was formerly a Chief Engineer at Microsemi and is the inventor of the '117 patent.

Polaris asserts that the proposed terms should be given their plain and ordinary meaning in light of the claim language and intrinsic evidence, which is consistent with Federal Circuit precedent and how the same claim terms of the '117 patent have been construed by another district court.

VIZIO's proposed constructions, however, are contrary to Federal Circuit precedent and the intrinsic evidence as discussed in detail below.  Moreover, VIZIO asserts that 7 of the 10 terms proposed for construction are indefinite in an effort to invalidate *all* claims of the '117 patent and avoid an adjudication of this case on the merits.[1]  VIZIO has also refused to state its theory of indefiniteness in the Joint Claim Construction Statement or in its invalidity contentions.  Therefore, as of the

---

[1] VIZIO contends that 19 of 22 terms identified in the Joint Claim Construction Statement are indefinite including all 8 terms of the '087 patent.  ECF 78-1 at Nos. 15-22.

1   filing of this brief, VIZIO has not disclosed to Polaris its theory of indefiniteness,

2   which is improper.  Regardless, VIZIO cannot prove by clear and convincing

3   evidence that any term of the '117 patent is indefinite.  For example, VIZIO asserts

4   that several "dark level bias" terms are indefinite.  However, another district court

5   has already construed "dark level bias" to be definite; and VIZIO's own expert has

6   admitted that it is definite and has a plain meaning to one of ordinary skill in the art.

7   The Court should thus adopt Polaris construction of the proposed terms.

8   **II.    OVERVIEW OF THE '117 PATENT**

9   The '117 patent is entitled "Method and Apparatus to Control Display

10  Brightness with Ambient Light Correction."  The '117 patent is directed to methods

11  and apparatuses for controlling the brightness of a display based on the ambient

12  light detected by a light sensor, a user signal indicative of a user selectable

13  brightness setting, and a dark level bias value.  Ex. A ('117 patent), Abstract, Figs.

14  1-10, col. 1:60-12:25.[2]  The inventions of the '117 patent can be implemented in

15  various ways including in software, analog circuitry, or mixed-signal circuitry.  *Id*.

16  at col. 2:7-16, 5:30-43, 14:9-12. Claim 1, which is representative, is shown below.

17      1. A brightness control circuit with selective ambient light correction
18      comprising:

19      a first input configured to receive a user signal indicative of a user
        selectable brightness setting;

20      a light sensor configured to sense ambient light and to output a
21      sensing signal indicative of the ambient light level;

22      a multiplier configured to selectively generate a combined signal
23      based on both the user signal and the sensing signal; and

        a dark level bias configured to adjust the combined signal to generate
24      a brightness control signal that is used to control a brightness level of
25      a visible display such that the brightness control signal is maintained
        above a predetermined level when the ambient light level decreases to
26      approximately zero.

27

28  _____

[2] All exhibits are to the Declaration of Kate E. Hart; and all emphasis is added.

*Id*. at col. 12:27-43.

The '117 patent describes several embodiments to illustrate the invention. In Figure 1, the dark level bias is added to the scaled sensing signal from the ambient light sensor at 104. *Id*. at Fig. 1, col. 4:45-5:14. That sum is then multiplied by the "dimming control," which is a user signal indicative of a user selectable brightness setting. *Id*. $K_1$ (100), $K_2$ (102), and $K_3$ (108) are scalar circuits that adjust the dark level bias, sensing signal, and the combined signal. *Id*.

*FIG. 1*



FIG. 1 is a block diagram of one embodiment of a brightness control circuit with ambient light correction. ***A user input (DIMMING CONTROL) is multiplied by a sum of a dark level bias (DARK LEVEL BIAS) and a light sensor output (LIGHT SENSOR) to produce a brightness control signal (BRIGHTNESS CONTROL)*** for a display driver 112. In one configuration, the dark level bias and the light sensor output are adjusted by respective scalar circuits (k1, k2) 100, 102 before being added by a summing circuit 104. An output of the summing circuit 104 and the user input is provided to a multiplier circuit 106. An output of the multiplier circuit 106 can be adjusted by a third scalar circuit (k3) 108 to produce the brightness control signal. An overdrive clamp circuit 110 is coupled to the brightness control signal to limit its amplitude range at the input of the display driver 112.

*Id*. at Fig. 1, col. 4:46-61. When the sensing signal from the light sensor is zero (*e.g.*, in complete darkness when the ambient light is approximately zero), the dark

level bias, which is added to the sensing signal to make it non-zero before multiplication, will make the brightness control signal positive and maintain it at a predetermined level when the ambient light is zero. This adjustment by the "dark level bias" allows the screen to still be visible in the absence of ambient light.

In Figure 2, the scaled sensing signal is multiplied by the "dimming control," which is a user signal, at 106. *Id.* at Fig. 2, col. 5:15-29. A dark level bias is then added to that product at 104. *Id.* $K_1$ (100), $K_2$ (102), and $K_3$ (108) are again scalar circuits that adjust the dark level bias, sensing signal, and brightness control signal, respectively. *Id.*



FIG. 2 is a block diagram of another embodiment of a brightness control circuit with ambient light correction. ***A light sensor output (LIGHT SENSOR) is adjusted by a scalar circuit (k2) 102 and then provided to a multiplier circuit 106.*** A user input (DIMMING CONTROL) is also provided to the multiplier circuit 106. ***The multiplier circuit 106 outputs a signal that is the product of the user input and scaled light sensor output. A summing circuit 104 adds the product to a dark level bias (DARK LEVEL BIAS) that has been adjusted by scalar circuit (k1) 100.*** An output of the summing circuit 104 is adjusted by scalar circuit (k3) 108 to generate a brightness control signal (BRIGHTNESS CONTROL) for a display driver 112. An overdrive clamp 110 is

coupled to the brightness control signal to limit its amplitude range at the input of the display driver 112.

*Id*. In Figure 2, when the sensing signal is zero (*e.g.*, in complete darkness when the ambient light is approximately zero), the combined signal resulting from multiplying the sensing signal and user signal would be zero as any number multiplied by zero is zero. The dark level bias, which is added to the combined signal in Figure 2, maintains the brightness control signal above a predetermined level at zero ambient light. This adjustment by the "dark level bias" value allows the screen to still be visible in the absence of ambient light.

Figure 4 shows another embodiment. In automatic mode, the brightness control signal in Figure 4 is calculated according to the following equation wherein the dutycycle is the user signal, the first term in brackets is the dark level bias, and ISRC is the sensing signal. *Id*. at Fig. 4, col. 7:3-47.

**Dark Level Bias**

$$BCS1 = dutycycle \times \left[ \left( \frac{VCC \times R2 \times R4}{[(R1 + R2) \times (R3 + R4)] + (R1 \times R2)} \right) + \left( \frac{ISRC \times R1 \times R2 \times R4}{[(R1 + R2) \times (R3 + R4)] + (R1 \times R2)} \right) \right]$$

The term ***"dutycycle" corresponds to the duty cycle of the user adjustable PWM logic signal***. The term "VCC" corresponds to the logic high output from the input buffer circuit 410. ***The term "ISRC" corresponds to the sensor current signal.*** The ***first major term within the brackets corresponds to a scaled dark bias level of the brightness control signal in total ambient darkness***. The ***second major term within the brackets introduces the effect of the visible light sensor 402.*** The network of resistors 412, 420 416, 418 helps to provide the dark bias level and to scale the product of the sensor current signal and the user adjustable PWM logic signal.

*Id*. At Fig 4, col. 7:24-35. When the sensing signal ISRC is zero (*e.g.*, when the ambient light is approximately zero), the dark level bias, which is added to the sensing signal to make it non-zero before multiplication, will make the brightness

control signal positive and maintain it at a predetermined level when the ambient light is zero.

In Figure 9, the brightness control signal is calculated as shown below.

$$BCS5 = \text{binary \% fullscale} \times \left[ \left[ \frac{[VCC \times (R2 \times R3)] + [ISRC \times R1 \times R2 \times R3]}{(R1 \times R2) + (R1 \times R3) + (R2 \times R3)} \right] \right]$$

Dark Level Bias

*Id.* at Fig. 9, col. 10:33-11:26. The "binary % fullscale" is the user signal. *Id.* ISRC is the sensing signal. *Id.* When the sensing signal ISRC is zero (*e.g.*, when the ambient light is approximately zero), the dark level bias, which is added to the sensing signal to make it non-zero before multiplication, will make the brightness control signal positive and maintain it at a predetermined level when the ambient light is zero.

## III.   LEGAL STANDARDS

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (citation omitted). "Absent lexicography or disavowal, we do not depart from the plain meaning of the claims." *Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 814 F.3d 1343, 1353 (Fed. Cir. 2016). "To act as a lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' and 'clearly express an intent to redefine the term.'" *Id.* (citation omitted). "While such disavowal can occur either explicitly or implicitly, it must be clear and unmistakable." *Id.* "[T]he ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314.

The specification is the "single best guide to the meaning of a disputed term." *Id.* at 1315. While Courts may rely on extrinsic evidence, it is "less significant than

1   the intrinsic record in determining 'the legally operative meaning of claim

2   language.'" *Id.* at 1317 (citation omitted).

3   The Supreme Court has stated that, to meet the definiteness requirement of 35

4   U.S.C. §112, ¶2, "a patent is invalid for indefiniteness if its claims, read in light of

5   the specification delineating the patent, and the prosecution history, fail to inform,

6   with reasonable certainty, those skilled in the art about the scope of the invention."

7   *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 US 898, 901 (2014).  As the *Nautilus*

8   Court recognized, "the definiteness requirement must take into account the inherent

9   limitations of language.  Some modicum of uncertainty . . . is the 'price of ensuring

10  the appropriate incentives for innovation.'" *Id.* at 909.  "[A] patentee need not

11  define his invention with mathematical precision in order to comply with the

12  definiteness requirement."  *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374,

13  1384 (Fed. Cir. 2005); *see also Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364,

14  1370 (Fed. Cir. 2014) ("absolute or mathematical precision is not required" to make

15  a claim definite). "The definiteness requirement, so understood, mandates clarity,

16  while recognizing that absolute precision is unattainable."  *Id.*  A challenger has the

17  burden of proving indefiniteness by clear and convincing evidence.  *BASF Corp. v.*

18  *Johnson Matthey, Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017).

19  **IV.   ARGUMENT**

20  **A.   "Ambient Light"**

| Claim Term | Polaris' Construction | VIZIO's Construction |
|---|---|---|
| "ambient light" | Plain and ordinary meaning | Light surrounding a visible display |

"Absent lexicography or disavowal, we do not depart from the plain meaning

of the claims." *Luminara*, 814 F.3d at 1353.  Because there is no lexicography or

disavowal, "ambient light" should be construed to have its plain and ordinary

meaning.  *Id.*  "Ambient light" is a plain English phrase that is easily understood by

a jury and does not require further construction.  *Phillips*, 415 F.3d at 1314 ("[T]he ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.").

VIZIO's proposed construction is *not* the plain and ordinary meaning and is contrary to the intrinsic evidence.  ***First***, VIZIO's construction is contrary to the embodiments in the specification.  In the embodiments of the '117 patent, light sensors detect the ambient light in the vicinity of the light sensor, not the entire display.  Balakrishnan Decl., ¶13.  Each of the embodiments in the '117 patent has a light sensor that detects ambient light at the light sensor ***not*** at some unnamed other location surrounding the visible display.  *See, e.g.*, Ex. A, Figs. 1, 2, col. 4:46-52, 5:15-18, 6:22-25, 10:33-35.

***Second***, VIZIO's proposed construction is contrary to both the claim language and the plain English meaning of "ambient light."  Technical dictionaries define "ambient light" as "light present in the environment around a *detecting device*."  Ex. B at 18.  In the claims of the '117 patent, the detecting device is a light sensor ***not*** a "visible display."  Claim 1, for example, states a ***light sensor configured to sense ambient light*** and to output a sensing signal indicative of the ambient light level."  Ex. A, col. 12:32-34.  Therefore, the "ambient light" in the claims of the '117 patent is the light present in the environment around the light sensor ***not*** the "light surrounding a visible display" as VIZIO contends, which could include light on the backside of the television far from the light sensor.  VIZIO's proposed construction is thus contrary to the language of claim 1 and the plain meaning of "ambient light."

VIZIO's construction is contrary to the claim language, the embodiments in the specification, and the plain meaning of "ambient light." Therefore, the Court should construe "ambient light" to have its plain and ordinary meaning.

///

### B.    "Configured To"

| Claim Term | Polaris' Construction | VIZIO's Construction |
|---|---|---|
| "configured to" | actually programmed or implemented with hardware or software to | Plain and ordinary meaning |

The district court in *Polaris PowerLED Techs., Inc. v. Samsung Elecs. Am., Inc. et al.*, Civil Action No. 2:17-cv-00715-JRG (E.D. Tex.) (the "*Samsung* case") construed "configured to" in the claims of the '117 patent at summary judgment when a dispute between the parties arose as to its meaning.  Ex. C, at pp. 3-4.  The district court correctly construed "configured to" in the '117 patent to mean "actually programmed or implemented with hardware or software to."  *Id*.  This construction of "configured to" would require that the accused televisions have hardware and/or software to perform the asserted claims of the '117 patent.

The district court's reasoning for its construction of "configured to" in the *Samsung* case is based on both the case law and the specification of the '117 patent.  *Id*.  The district court in *Samsung* explained its construction as follows:

> The Court, consistent with *O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, determined that this motion and Polaris's related motion (Dkt. No. 196) raised an actual dispute as scope of the term "configured to," as set forth in U.S. Patent No. 8,223,117 (the "'117 Patent"), requiring additional claim construction. (Dkt. No. 330, at 131:8–12, 20–23.) 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an actual dispute regarding the proper scope of [the] claims, the court, not the jury, must resolve that dispute."). Accordingly, the Court *sua sponte* construed the term "configured to" (Dkt. No. 18-1, at 12:30–38) as "**actually programmed or implemented with hardware or software to**." (Dkt. No. 330, at 131:13–19.) See *SIPCO, LLC v. ABB, Inc.*, No. 6:11-cv-48-LED-JDL, 2012 WL 3112302, at *11 (E.D. Tex. July 30, 2012) ("[T]he claims mandate that the devices are 'configured to' perform particular functions. Interpreting 'configured to' as requiring only mere capability would eliminate any meaningful limits to the claims. Accordingly, the Court finds that 'configured to' means 'actually programmed or equipped with hardware or software to.'"). This construction is consistent with the intrinsic record—i.e., the

> specification of the '177 [sic] Patent. (*See e.g.*, Dkt. No. 18-1, at 2:7–10 ("In one embodiment, ***software*** algorithm can be used to multiply the light sensor output with the user selectable brightness control. In another embodiment, ***analog or mixed signal circuits*** can be used to perform the multiplication.") (emphasis added).)

*Id.*, at pp. 3-4 (emphasis in original).

Other courts have similarly interpreted "configured to." *SIPCO, LLC v. ABB, Inc.*, 2012 WL 3112302, at *11 (E.D. Tex. July 30, 2012) (construing "configured to" as "actually programmed or equipped with hardware or software to"); *Radware Ltd. v. A10 Networks, Inc.*, 2014 WL 1572644, at *12 (N.D. Cal. April 18, 2014) (in the context of software claims, the court construed "configured to" as "programmed to [perform certain functions]" stating that "configured to" requires "that the claimed feature be included in the software.").

As the district court in the *Samsung* case noted, the invention of the '117 patent can be implemented in software or hardware. Ex. A, col. 2:7–10, 5:35-38, 14:9-12; Ex. C at pp 3-4. Therefore, consistent with the court in *Samsung* and other courts, "configured to" in the claims should be construed to be as "actually programmed or implemented with hardware or software to."

Polaris' proposed construction is also consistent with the Federal Circuit's interpretation of "configured to" in patent claims.

> To take a simple example, a patent that claims an automobile configured to operate in third gear would be infringed by an automobile that is configured to operate in first, second, and third gears. The automobile is at all times configured to operate in any one of its possible gears, including the infringing one, even if the automobile is never driven in the infringing gear.

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 899 F.3d 1356, 1363 (Fed. Cir. 2018). In the Federal Circuit's example, the car is programmed or implemented with hardware or software to operate in first, second, and third gears and thus configured to operate in any one of those gears. *Id.* Polaris' proposed construction is thus consistent with the construction of the term by numerous federal courts.

Therefore, the Court should adopt Polaris' construction of "configured to."

## C.    "Dark Level Bias" Terms

| Claim Term | Polaris' Construction | VIZIO's Construction |
|---|---|---|
| "a dark level bias configured to adjust the combined signal to generate a brightness control signal that is used to control a brightness level of a visible display" | Plain and ordinary meaning | Indefinite |
| "wherein the dark level bias is provided to the multiplier such that the amount of adjustment to the combined signal is dependent on the user selectable brightness setting" | Plain and ordinary meaning | Indefinite |
| "wherein the dark level bias is added to the combined signal such that the amount of adjustment to the combined signal is independent of the user selectable brightness setting" | Plain and ordinary meaning | Indefinite |
| "wherein the dark level bias is added to an output of the multiplier" | Plain and ordinary meaning | Indefinite |
| "adjusting the combined signal with a dark level bias to generate a brightness control signal for controlling brightness of a visible display" | Plain and ordinary meaning | Indefinite |
| "wherein the dark level bias is added to the combined signal after selective multiplication such that the amount of adjustment to the combined signal is independent of the input signal and the sense signal" | Plain and ordinary meaning | Indefinite |

VIZIO contends that all six of the phrases containing "dark level bias" are indefinite thereby rendering **_all_** claims of the '117 patent invalid.  VIZIO has not provided Polaris with its theory of indefiniteness for each of these terms as VIZIO

has refused to articulate its theory of indefiniteness in the Joint Claim Construction Statement or in its invalidity contentions.  VIZIO has only stated that "dark level bias" is indefinite under the law.  As explained below, VIZIO's arguments are not consistent with intrinsic evidence or the law.

### 1. "Dark Level Bias" Has Its Plain and Ordinary Meaning Based on the Intrinsic Evidence

The term "dark level bias" should be given its plain and ordinary meaning. One of ordinary skill in the art would understand the plain and ordinary meaning of "bias" in the context of the '117 patent to be a value, which can be, for instance, a voltage value of an electrical signal or a value of a software variable in a software implementation as the patent states that the invention can be implemented in hardware or software.  Ex. A, col. 2:7-10[3], 5:37-38[4], 14:9-12[5]; Balakrishnan Decl., ¶¶27-28.  One of ordinary skill in the art would thus understand that "dark level bias" refers to the "bias" value when the ambient light level is low (*i.e.*, at a dark level).  *Id*.

The intrinsic evidence supports Polaris' plain and ordinary meaning construction of  "dark level bias."  Claim construction begins with the language of the claims.  Here, one of ordinary skill in the art would understand the claim language to define "dark level bias" as a value that adjusts the combined signal to maintain the brightness control signal above a predetermined level when the ambient light level is very low (*i.e.* "approximately zero").  *Id*. at ¶28.

1. A brightness control circuit with selective ambient light correction

---

[3] "In one embodiment, software algorithm can be used to multiply the light sensor output with the user selectable brightness control. In another embodiment, analog or mixed-signal circuits can be used to perform the multiplication."
[4] "The multiplier circuit 106 can be implemented using software algorithm or analog/mixed-signal circuitry."
[5] "The method of claim 15, wherein the step of selectively multiplying the input signal with the sense signal is performed by a software algorithm, an analog circuit, or a mixed-signal circuit."

comprising:

a first input configured to receive a user signal indicative of a user selectable brightness setting;

a light sensor configured to sense ambient light and to output a sensing signal indicative of the ambient light level;

a multiplier configured to selectively generate a combined signal based on both the user signal and the sensing signal; and

a ***dark level bias configured to adjust the combined signal*** to generate a brightness control signal that is used to control a brightness level of a visible display such that the brightness control signal is maintained above a predetermined level ***when the ambient light level decreases to approximately zero***.

Ex. A, claim 1.  This adjustment by the "dark level bias" is important as it allows the screen to still be visible in the absence of ambient light when the sensing signal is, for example, a value of zero.  Balakrishnan Decl., ¶28.

The dependent claims similarly confirm that the "dark level bias" has its plain and ordinary meaning of a "value" (*e.g.*, voltage value of an electrical signal or value of a software variable).  *Id*. at ¶29.  In the dependent claims, the "dark level bias" is "added to," or multiplied by, other signal values, which only makes sense if the "dark level bias" is a "value."

3. The brightness control circuit of claim 2, wherein the ***multiplier multiplies a sum of the user signal and the sensing signal by the dark level bias*** to generate an output signal corresponding to the brightness control signal.

4. The brightness control circuit of claim 1, wherein the ***dark level bias is added to*** the combined signal such that the amount of adjustment to the combined signal is independent of the user selectable brightness setting.

5. The brightness control circuit of claim 4, wherein the ***dark level bias is added to*** an output of the multiplier.

17. The method of claim 15, wherein the ***dark level bias is added to*** the sense signal before selective multiplication such that the amount of adjustment to the combined signal is dependent on the input signal.

18. The method of claim 15, wherein the ***dark level bias is added to***

the combined signal after selective multiplication such that the amount of adjustment to the combined signal is independent of the input signal and the sense signal.

Ex. A, claims 3-5, 17-18. Because the "dark level bias" is added to, and multiplied by, other signal values, the "dark level bias" must be a value (*e.g.*, voltage value of an electrical signal or value of a software variable), which is consistent with its plain and ordinary meaning to one of ordinary skill in the art. Balakrishnan Decl., ¶29.

Further, Polaris' construction is supported by the embodiments of the '117 patent. *Id.* at ¶¶30-34. For example, Figure 1 is a block diagram showing that the "dark level bias" can be scaled by scalar circuit $K_1$ indicating that it is a value that can be scaled. Ex. A, Fig. 1, col. 4:45-61. Figure 1 then shows the value of the "dark level bias" being added to the sensing signal from the light sensor before being multiplied by the dimming control (*i.e.*, user signal). *Id.*



Ex. A, Fig. 1. The fact that the "dark level bias" is added to the sensing signal confirms that the "dark level bias" is a value (*e.g.*, voltage value of an electrical signal or the value of a software variable). Balakrishnan Decl., ¶30.

Similarly, Figure 2 is a block diagram showing the "dark level bias" is a

"value" that can be scaled by scalar circuit $K_1$. Ex. A, Fig. 2, col. 5:15-29; Balakrishnan Decl., ¶31. The dark level bias value is then added to the product of the sensing signal and user signal by summing circuit 104. *Id.*



Ex. A, Fig. 2. The fact that the "dark level bias" is added by summing circuit 104 means that it is a "value" used in determining the brightness control signal. Balakrishnan Decl., ¶31.

With respect to Figures 4, 8, and 9, the '117 patent discloses equations confirming that the "dark level bias" is a value in accordance with its plain and ordinary meaning. *Id.* at ¶¶32-34. In the equation for Figure 4, the first mathematical term in brackets is the "dark level bias" wherein VCC is the logic high output from the input buffer circuit and R1-R4 are resistor values.



The term "dutycycle" corresponds to the duty cycle of the user adjustable PWM logic signal. The term ***"VCC" corresponds to the logic high output from the input buffer circuit 410***. The term "ISRC"

corresponds to the sensor current signal. ***The first major term within the brackets corresponds to a scaled dark bias level of the brightness control signal in total ambient darkness***. The second major term within the brackets introduces the effect of the visible light sensor 402. The network of resistors 412, 420 416, 418 helps to provide the dark bias level and to scale the product of the sensor current signal and the user adjustable PWM logic signal.

Ex. A, Fig. 4, col. 7:17-35. Defining the dark level bias mathematically confirms that the dark level bias is a value (*e.g.*, voltage value of an electrical signal or the value of a software variable) that can be used to calculate or determine the brightness control signal. Balakrishnan Decl., ¶32.

In Figure 8, the automatic brightness control operates according to the following equation.

<strong style="color:blue">Dark Level Bias</strong>

$$BCS3 = \left[ VCC \times \frac{R3}{(R1 + R3)} \right] + \left[ ISRC \times \frac{(R1 \times R3)}{(R1 + R3)} \right]$$

*Id*. at col. 9:61-10:19. ISRC is the sensing signal, and the first bracketed term is the dark level bias value. *Id*. at Fig. 8, col. 9:38-10:19. R3 is a user signal. *Id*. Again, by defining the "dark level bias" mathematically, the '117 patent confirms that the "dark level bias" is a value. Balakrishnan Decl., ¶33.

Similarly, in Figure 9, the dark level bias is again the first mathematical term in brackets containing "VCC."

<strong style="color:blue">Dark Level Bias</strong>

$$BCS5 = \text{binary \% fullscale} \times \left[ \left[ \frac{[VCC \times (R2 \times R3)] + [ISRC \times R1 \times R2 \times R3]}{(R1 \times R2) + (R1 \times R3) + (R2 \times R3)} \right] \right]$$

Ex. A at col. 11:10-15. The fact that the dark level bias is expressed as a mathematical term in an equation in each of these embodiments confirms that the "dark level bias" has its plain and ordinary meaning as a value where the ambient light is approximately zero (*i.e.*, in the absence of ambient light). *Id*. Therefore, the

claim language and embodiments both confirm that "dark level bias" should be given its plain and ordinary meaning.

### 2. Another District Court, Polaris' Expert, and VIZIO's Expert All Agree That "Dark Level Bias" Is Definite And Has Its Plain and Ordinary Meaning

VIZIO's indefiniteness arguments regarding "dark level bias" are meritless and should be rejected by the Court.  VIZIO *cannot* show by clear and convincing evidence that "dark level bias" when read in light of the specification fails to inform with reasonable certainty one of ordinary skill in the art about the scope of the invention.  *BASF*, 875 F.3d at 1365.  ***First***, based on the intrinsic evidence discussed above, in the *Samsung* case, another district court construed "dark level bias" in the claims of the '117 patent to be definite and have its "plain and ordinary meaning." The district court in that case reasoned as follows:

> ***The parties do not dispute that the dark level bias is a value***. Indeed, ***it is clear from the context of the surrounding claim language that the dark level bias is a value***. There is no need to clarify this in a claim construction. There is also no need to change "adjust" to "change" and "adjusting" to "changing."… Accordingly, ***the Court*** rejects Defendants' proposed "added"/"adding" and "predetermined" limitations and ***holds that the "dark level bias" terms have their plain and ordinary meaning without the need for further construction***.

Ex. D, at 25, 30.  In that case, *both* parties and the court agreed that the term "dark level bias" was definite and referred to a "value" consistent with its plain and ordinary meaning based on the claim language and intrinsic evidence.  *Id.*

The fact that another district court considered the intrinsic evidence and construed "dark level bias" to have its plain and ordinary meaning without the need for further construction is strong evidence that "dark level bias" is definite and that its meaning is clear from the surrounding claim language.  *Id.*  Based on the strong reasoning of the district court in *Samsung* which held that "dark level bias" had its plain and ordinary meaning, VIZIO cannot meet its burden of proving indefiniteness by clear and convincing evidence.

***Second***, both parties' experts agree that one of ordinary skill in the art would understand that the term "dark level bias" to have its plain meaning of "value" based on the intrinsic evidence.  Polaris' expert, Professor Ravin Balakrishnan, has provided the following testimony that one of ordinary skill in the art would understand "dark level bias" to have its plain and ordinary meaning:

> In view of the specification and claim language, one of ordinary skill in the art would understand "dark level bias" with reasonable certainty.  ***One of ordinary skill in the art would understand the plain and ordinary meaning of "dark level bias" in the context of the '117 patent to be a value (e.g., voltage value of an electrical signal or a value of a software variable).  This value adjusts the combined signal to maintain the brightness control signal above a predetermined level when the ambient light level decreases to approximately zero (i.e., at a "dark level")***.

Balakrishnan Decl., ¶27.

Similarly, VIZIO's expert in *this* case,[6] Dr. Phillip Hobbs, agrees that "dark level bias" is definite and that one of ordinary skill in the art would understand the plain and ordinary meaning of "dark level bias" in the context of the '117 patent to be a "value."  In addition to being VIZIO's expert in this case, Dr. Hobbs was also Samsung's expert regarding the '117 patent in the *Samsung* case.  In claim construction in the *Samsung* case, Dr. Hobbs provided the following testimony regarding the meaning of "dark level bias" in the '117 patent:

> 40.  In my opinion, ***one skilled in the art would have understood the term "a dark level bias configured to adjust the combined signal" (claim 1) to mean*** a predetermined ***value that is added to the combined signal***.  Similarly, ***one skilled in the art would have understood the term "adjusting the combined signal with a dark level bias" (claim 15) to mean adding*** a predetermined ***value to the combined signal***…
>
> 42. ***This is reinforced by the equations for calculating the brightness control signal that are provided later in the specification*** (in

---

[6] Dr. Hobbs submitted an expert declaration on behalf of VIZIO in support of its Rule 11 motion just over 6 weeks ago (ECF 74-2).

description of Figures 4, 8, and 9), which further confirm that the ***dark level bias value***..."

*Id*.  VIZIO's expert, Dr. Hobbs, thus agrees with Polaris' expert, Dr. Balakrishnan, that "dark level bias" is definite and reasonably certain to one of ordinary skill in the art.[7]  Balakrishnan Decl., ¶¶27-28; Ex. E, at pp. 17-18.  Both experts and the district court understood "dark level bias" to be a value in the context of the claims of the '117 patent and thus ***not*** indefinite. Balakrishnan Decl., ¶27; Ex. E, at pp. 17-18; Ex. D, at 25, 30.

Despite the fact that Dr. Hobbs has been retained by VIZIO in this case and has experience as an expert on the '117 patent, VIZIO has suspiciously abandoned Dr. Hobbs for purposes of claim construction as his testimony regarding the '117 patent is fatal to VIZIO's indefiniteness arguments in this case.

***Third***, VIZIO cannot meet the clear and convincing evidence standard for indefiniteness.  Here, the evidence is overwhelming that the "dark level bias" terms are definite.  As discussed above, the district court in the *Samsung* case has already found the term "dark level bias" to be definite and construed it to have its plain and ordinary meaning.  Ex. D, at 25, 30.  The fact that "dark level bias" was construed by a district court to have its plain and ordinary meaning confirms that the term is reasonably certain and definite under the law.

Moreover, in the *Samsung* case, ***both parties and both of their experts agreed*** that "dark level bias" was definite and that one of ordinary skill in the art would understand "dark level bias" to be a "value" based on the intrinsic evidence. Ex. D, at 25, 30; Ex. E, at pp. 17-18.  The fact that neither party nor their experts raised any issue of indefiniteness regarding "dark level bias" is very strong evidence that "dark level bias" is reasonably certain and definite.  Moreover,

---

[7] While the court in the *Samsung* case rejected "Defendants' proposed 'added'/'adding' and 'predetermined' limitations," the Court held that the "dark level bias" was a "value" as both parties and Dr. Hobbs agreed.  Ex. D, at 25, 30, Ex. E, at pp. 17-18.

PLAINTIFF'S OPENING CLAIM
CONSTRUCTION BRIEF
CASE NO. 8:18-cv-01571-JVS-DFM

Polaris' expert and VIZIO's own expert in this case, Dr. Hobbs, have testified that "dark level bias" is definite and has a plain and ordinary meaning to one of ordinary skill in the art.

Therefore, VIZIO *cannot* meet its burden of proving indefiniteness by clear and convincing evidence given the fact that Samsung, Polaris, Polaris' expert Dr. Balakrishnan, VIZIO's expert Dr. Hobbs, and another district court all agree that "dark level bias" in the claims of the '117 patent is definite and has a plain and ordinary meaning of a "value" to one of ordinary skill in the art.

Based on the weight of the intrinsic and extrinsic evidence, the Court should adopt Polaris' constructions for the "dark level bias" terms.

### D. "The Brightness Control Signal Is Maintained Above a Predetermined Level When the Ambient Light Level Decreases to Approximately Zero"

| Claim Term | Polaris' Construction | VIZIO's Construction |
|---|---|---|
| "the brightness control signal is maintained above a predetermined level when the ambient light level decreases to approximately zero" | Plain and ordinary meaning | Indefinite |

The parties dispute whether the phrase "the brightness control signal is maintained above a predetermined level when the ambient light level decreases to approximately zero" is indefinite. While VIZIO has not told Polaris its theory of indefiniteness, VIZIO has identified its position that the terms "predetermined level" and "approximately zero" are indefinite. Because the '117 patent's specification and prosecution history inform one of ordinary skill in the art of the scope of this language with reasonable certainty, the Court should find this limitation definite and adopt Polaris' plain and ordinary meaning construction.

The '117 patent explains that the "dark level bias" maintains the brightness control signal "above a predetermined level when the ambient light level decreases to approximately zero" so that the display is visible in the absence of ambient light.

> The ***dark level bias circuit maintains the brightness control signal
> above a predetermined level when the ambient light level decreases
> to approximately zero***. Thus, the ***dark level bias circuit ensures a
> predefined (or minimum) brightness in total ambient darkness***.

Ex. A, col. 2:57-61.  One of ordinary skill in the art would thus understand that, as
long as there is a predetermined level above which the brightness control signal is
maintained when the ambient light reaches zero, then the "predetermined level"
limitation is met.  Balakrishnan Decl., ¶¶37-38.

Figure 3 shows an example of the voltage values of the brightness control
signal versus ambient light levels in the embodiment shown in Figure 1.  Ex. A, col.
5:44-46.  The six lines plotted in Figure 3 (100% Duty, 80% Duty, 60% Duty, 40%
Duty, 20% Duty, and 0% Duty) represent different brightness settings selected by
the user.  *Id.* at col. 5:52-6:21.

For each line in Figure 3, the brightness control signal decreases as the
ambient light level decreases; and the rate of change for each curve depends on the
user signal (*i.e.*, the "duty").  *Id.* at col. 6:4-6.  The '117 patent explains that "higher
user settings cause the associated brightness control signals to increase faster as a
function of ambient light level."  *Id.* at 6:7-9.

As the ambient light approaches zero (*i.e.*, "approximately zero"), the '117
patent explains (and Figure 3 shows) that the brightness control signals drop to a
"predetermined level" as shown in annotated Figure 3 below.  *Id.* at col. 5:52-6:21;
Balakrishnan Decl., ¶¶38-42.



Brightness Control Signal at "Predetermined Level" When "Ambient Light" is "Approximately Zero"

Ex. A, Fig. 3.  As Figure 3 shows, the "predetermined level" of the brightness control signal voltage when the ambient light is approximately zero can vary depending on the brightness setting selected by the user (*e.g.*, the duty). Balakrishnan Decl., ¶41.  For example, when the user selects a brightness setting that corresponds to the 100% duty (blue line), the "predetermined level" in Figure 3 is 20% of the maximum brightness control signal voltage when the ambient light level is "approximately zero."  Similarly, when the user selects a brightness setting that corresponds to the 40% duty (green line), the "predetermined level" is about 8% of the maximum brightness control signal voltage when the ambient light level is "approximately zero."  Further, the '117 patent teaches that the "predetermined level" can vary depending on the dark level bias and the user brightness setting selected by the user.  *Id*. at 6:10-12.  As long as there is a predetermined level above which the brightness control signal is maintained when the ambient light reaches zero, one of ordinary skill in the art would understand that the "predetermined level" limitation is met.  Balakrishnan Decl., ¶¶37-38.

The '117 patent's specification thus informs one of skill in the art, with

reasonable certainty, of the scope of the claim language requiring "that brightness control signal is maintained above a predetermined level when the ambient light level decreases to approximately zero." Balakrishnan Decl., ¶¶37-42. Further, one of ordinary skill in the art would understand that, as the ambient light decreases, the value of the brightness control signal will decrease. *Id*. at ¶¶38-42. One of ordinary skill in the art would understand that, when the ambient light is approximately zero (*i.e.*, total ambient darkness), the brightness control signal will be maintained at a predetermined level of brightness that keeps the display visible for the user in complete darkness. Balakrishnan Decl., ¶¶38-42; Ex. A, col. 5:30-35.

In view of the specification and Figure 3, VIZIO's argument that "predetermined level" is indefinite is meritless. ***First***, as discussed above, the '117 patent specification provides numerous examples and discussion of maintaining the brightness control signal above a "predetermined level" that would inform one of skill in the art of the meaning and scope of this claim language. *See, e.g.*, Ex. A, col. 2:57-59, 5:38-41, 12:38-43, 14:4-9. Figure 3 alone provides examples of "predetermined levels" of about 20%, 16%, 12%, 8%, 4%, and 0% of the maximum brightness control voltage. *Id*. at Fig. 3; Balakrishnan Decl., ¶¶39-42.

***Second***, a specific "predetermined level" is not necessary for a potential infringer to determine whether they infringe the '117 patent. If an accused display maintains brightness above any "predetermined level" in ambient darkness (when ambient light is approximately zero), this limitation is satisfied regardless of the numerical value of the "predetermined level." Balakrishnan Decl., ¶42.

***Third***, courts have repeatedly found the term "predetermined" to be definite. *IBM v. The Priceline Grp., Inc.*, 2016 WL 6405824, *5-6 (D. Del. Oct. 28, 2016) (rejecting an indefiniteness argument and finding "predetermined plan" did not require construction); *Integra LifeSciences Corp. v. HyperBranch Medical Tech., Inc.*, 2017 WL 3336274, *22 (D. Del. Jul. 27, 2017) ("There is no dispute that 'predetermined' means 'determined in advance.'").

Additionally, VIZIO argues that the term "approximately" renders all claims of the '117 patent invalid as indefinite.  This is incorrect.  The '117 patent's use of "approximately zero" does ***not*** render the claim language indefinite.  ***First***, "a patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement."  *Interval Licensing*, 766 F.3d at 1370 ("absolute or mathematical precision is not required" to make a claim definite). One of ordinary skill in the art would clearly understand the scope of the claims and whether there is infringement because the claims simply require that, as the ambient light approaches and reaches zero, the system maintains the brightness control signal above a predetermined level such that the brightness control signal never goes below that level when the ambient light is zero.  Balakrishnan Decl., ¶42. Identifying such a predetermined level for the brightness control signal at zero ambient light is straightforward.  The term "approximately zero" accounts for any measurement or rounding errors present in ambient light sensors.  *Duraflame, Inc. v. Hearthmark, LLC*, 2013 WL 594241, at *7–8 (N.D. Cal. Feb. 14, 2013) (construing similar term "about" to include amounts "within measurement errors and rounding approximations").

***Second***, courts have repeatedly and consistently held that "approximately" is definite and found that the term simply serves to avoid strict numerical boundaries that would unnecessarily constrain claim scope.  *Twin Rivers Eng'g, Inc. v. Fieldpiece Instruments, Inc.*, 2018 WL 1583382, *5 (C.D. Cal. 2018) ("The word 'approximately' is commonly understood to mean 'reasonably close to: nearly, almost, about.'"); *Max Blu Techs., LLC v. Cinedigm Corp.*, 2016 WL 3688801, *30 (E.D. Tex. Jul. 12, 2016) (finding the claim language's use of "approximately" was definite and was "used to avoid strict numerical boundaries."); *Thomas Swan & Co. Ltd. v. Finisar Corp.*, 2014 WL 2885296, *27-28 (E.D. Tex. Jun. 25, 2014) (rejecting indefiniteness arguments and construing "approximately" terms to mean "close to"); *Messer v. HO Sports Co. Inc.*, 2007 WL 2011210, *9-11 (D. Or. Jul. 9,

2007) (treating "approximately" like "about" and construing the term in the context of the claim to extend beyond the specific values recited in the claims).

Therefore, for the aforementioned reasons, the Court should reject VIZIO's indefiniteness arguments, and construe "the brightness control signal is maintained above a predetermined level when the ambient light level decreases to approximately zero" to have its plain and ordinary meaning.

### E.   "Overdrive Clamp Circuit"

| Claim Term | Polaris' Construction | VIZIO's Construction |
|---|---|---|
| "the brightness control signal is maintained above a predetermined level when the ambient light level decreases to approximately zero" | Plain and ordinary meaning | Plain and ordinary meaning |

Since filing the Joint Claim Construction Statement, the parties have reached agreement on the term "overdrive clamp circuit."  VIZIO informed Polaris that it agreed with Polaris' construction just one day before the claim construction briefing was due to be filed with the Court.  Ex. F, 9/12/19 Email.  Because both parties agree that "overdrive clamp circuit" should have its plain and ordinary meaning without any further construction required by the Court, the parties request that the Court adopt the parties' agreed to construction.  *Id*.

### V.   CONCLUSION

For the aforementioned reasons, the Court should adopt Polaris' constructions for the disputed terms.

1    Dated:  September 13, 2019                FEINBERG DAY KRAMER
                                              ALBERTI TONKOVICH LIM &
2                                             BELLOLI LLP

3

4                                             By: /s/ Robert F. Kramer
                                                  Robert F. Kramer
5

6                                             Attorneys for Plaintiff
                                              Polaris PowerLED Technologies, LLC
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPENING CLAIM
                                              CONSTRUCTION BRIEF
                                          CASE NO. 8:18-cv-01571-JVS-DFM