QUINN EMANUEL URQUHART & SULLIVAN LLP
Zachariah Summers (SBN 255284)
zachsummers@quinnemanuel.com
Miles D. Freeman (SBN 299302)
milesfreeman@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Raymond N. Nimrod (admitted *pro hac vice*)
raynimrod@quinnemanuel.com
Richard W. Erwine (admitted *pro hac vice*)
richarderwine@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendant VIZIO, INC.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

POLARIS POWERLED TECHNOLOGIES, LLC

Plaintiff,

v.

VIZIO, INC.

Defendant.

Case No. 8:18-cv-01571-JVS-DFM

**VIZIO, INC.'S OPPOSITION TO POLARIS POWERLED TECHNOLOGIES, LLC'S MOTION TO ENFORCE**

Hearing Date: January 6, 2020

Time: 1:30 P.M.

Place: Courtroom 10C

Judge: Hon. James V. Selna

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page**

I. FACTUAL BACKGROUND .......... 4

II. ARGUMENT .......... 10

A. VIZIO Has Fully and Faithfully Complied with the Court's Order .......... 10

B. The Court Should Ignore Polaris's Mischaracterizations and Misleading Statements Regarding the State of Discovery .......... 12

III. CONCLUSION .......... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Am. Maplan Corp. v. Heilmayr*,
203 F.R.D. 499 (D. Kans. 2001) ........................................ 13

*Noaimi v. Zaid*,
283 F.R.D. 639 (D. Kan. 2012) ........................................ 13

## **Statutes**

Fed.R.Civ.P. 34(a)(1) ........................................ 13

Despite all of the rhetoric set forth in Polaris's Motion to Enforce, the facts underlying this Motion are straightforward and largely undisputed. On September 19, 2019, the Court entered an Order granting Polaris's Motion to Compel. Dkt. 121. The Court determined that VIZIO's Standard Supply Agreements "allow[] it to demand the information Polaris seeks in its RFPs" and, on that basis, stated that "[w]ithin 10 days of this order, VIZIO shall demand that its Suppliers produce the documents." *Id.* at 5. Five days after the Court's Order, VIZIO contacted the manufacturers and demanded that all documents related to all accused products within their possession, custody, or control be immediately produced. VIZIO also sent each manufacturer a copy of the Court's Order and stated that "VIZIO is obligated by law to comply with the Court's Order and expects [its manufacturers] to comply with this request." *See* Exs. 1-6. Throughout October and November, VIZIO sent multiple follow-up emails and letters (all of which were produced to Polaris immediately after being sent), providing further information regarding the specific products at issue and the specific types of documents expected to be produced.

In response to VIZIO's demands, [redacted]

| [redacted] | [redacted] | [redacted] | [redacted] |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |



Despite this extensive production of documents and source code, Polaris maintains in its Motion that VIZIO has somehow "willfully failed to timely and conscientiously abide by the Court's Order." Mot. at 2. There is no basis in fact or law for that statement. VIZIO demanded that its manufacturers produce the documents and in response to those demands, tens of thousands of documents have been produced, along with source code. Polaris cannot dispute these facts, and its Motion "to Enforce the Court's Order" should be denied for the simple reason that VIZIO has, is, and will continue to comply fully with the Court's order.

Polaris's Motion essentially ignores VIZIO's extensive efforts to ensure compliance as well as the significant document productions by the manufacturers. Instead, Polaris devotes most of its Motion to mischaracterizing the procedural history and raising a host of other discovery "issues" that are not at all the subject of the Court's September 19, 2019 Order and have either already been resolved in VIZIO's favor by Magistrate Judge McCormick or are in the process of being addressed. For example, Polaris incorrectly suggests that VIZIO has somehow "concealed" its relationships with its manufacturers and that its agreements with the manufacturers were produced late in discovery after pressure by Polaris. But that claim is fundamentally untrue. Not only did VIZIO identify its manufacturers

almost a year ago as part of its Initial Disclosures, VIZIO's supply agreements with the manufacturers were included in VIZIO's ***very first production*** to Polaris in May 2019. And Polaris's new argument that three of the six manufacturers hold minority, non-controlling stakes in VIZIO is not only a matter of public knowledge but entirely irrelevant to this Motion. VIZIO has complied with the Court's order by demanding those documents pursuant to the Court's Order and producing them as soon as they are received.

As to the remainder of Polaris's claims of "discovery deficiencies" and "misconduct," those similarly lack merit and are irrelevant to the present Motion. To date, VIZIO has produced 25,631 documents (totaling close to 150,000 pages of materials) including, for example, [REDACTED] Representative examples of these documents are attached hereto at Exhibits 77 through 83. To the extent there have been limited disputes regarding either party's production (including Polaris's, for that matter (*see* Dkts. 127 & 216)), those disputes either have been or are in the process of being resolved by Judge McCormick.

Contrary to Polaris's inflammatory contentions, VIZIO and the manufacturers have timely provided Polaris with expansive discovery into the accused televisions. No one has or is refusing to produce the requested information. Polaris's Motion should therefore be denied.

## I. FACTUAL BACKGROUND

In light of Polaris's one-sided and incomplete recitation of the facts, VIZIO provides below a more complete and accurate summary of the relevant facts.

On September 19, 2019, the Court entered an Order granting Polaris's Motion to Compel. Dkt. 121. The Court found in its Order that [REDACTED] "allows it to demand the information Polaris seeks in its RFPs" and, on that basis, stated that "[w]ithin 10 days of this order, VIZIO shall demand that its Suppliers produce the documents." *Id.* at 5. Upon receipt of the Court's Order, VIZIO immediately began taking steps to comply with the Court's directives.

Five days after issuance of the Court's Order, on September 24, 2019, VIZIO sent (by both email and first class mail) formal demand letters to each of its manufacturers [REDACTED] VIZIO's demand letters expressly [REDACTED]

[1] VIZIO's September 24, 2019 letters to its manufacturers (which Polaris did not attach in full to its Motion) are attached hereto as Exhibits 1 through 6. All of the correspondence discussed herein was produced to Polaris very shortly after being sent or received by VIZIO. Freeman Decl. at ¶ 90.

To assist the manufacturers in understanding the issues and procedural posture of this case, VIZIO also provided each manufacturer with several relevant documents. First, VIZIO provided each manufacturer with a copy of the Court's Order and emphasized that "VIZIO is obligated by law to comply with the Court's Order and expects [its manufacturers] to comply with this request." *Id.* Second, VIZIO provided each manufacturer with a copy of the Protective Order and informed each manufacturer that "VIZIO will designate any documents produced in connection with this demand as Highly Confidential – Attorneys' Eyes Only under the Protective Order." Ex. 1 at 2; Ex. 2 at 2; Ex. 3 at 2; Ex. 4 at 2; Ex. 5 at 2; Ex. 6 at 2. VIZIO further explained that it would also "provide the necessary protections for source code" produced by the manufacturers, including loading it on to a non-networked computer that would be "strictly monitored by [VIZIO's outside] attorneys." *Id.* Finally, VIZIO attached Polaris's Infringement Contentions and the specific discovery requests from Polaris that were at issue in the Court's September 19, 2019 to help provide context and further specificity for VIZIO's demands. *Id.*

On September 27, 2019, VIZIO sent follow-up letters to each of its manufacturers in which it provided an identification of "the specific models VIZIO understands were manufactured by [that manufacturer] during the relevant time frame." Ex. 7 at 1; Ex. 8 at 1; Ex. 9 at 1; Ex. 10 at 1; Ex. 11 at 1; Ex. 12 at 1. In each of those follow-up letters, VIZIO reiterated that "the information sought in our September 24, 2019 letter must be produced for each of these models and any other models that you may have manufactured for VIZIO during this time frame." Ex. 7 at 4; Ex. 8 at 5; Ex. 9 at 2; Ex. 10 at 3; Ex. 11 at 2; Ex. 12 at 1. On October 1, 2019, VIZIO identified additional models "for which documents should be produced in connection with VIZIO's September 24, 2019 document demand." Ex. 13 at 1; Ex. 14 at 1; Ex. 15 at 1; Ex. 16 at 1; Ex. 17 at 1; Ex. 18 at 1. VIZIO again reiterated that, while it was providing this identification of specific models to assist the manufacturers in their search, "the information sought in our September 24, 2019

letter must be produced for all models that [the manufacturer] may have manufactured for VIZIO during this time frame." Ex. 13 at 9; Ex. 14 at 10; Ex. 15 at 4; Ex. 16 at 4; Ex. 17 at 2; Ex. 18 at 2.

As set forth below in greater detail, while the manufacturers began producing documents in response to VIZIO's demands in early October, VIZIO has also continued to send follow-up emails and letters to the manufacturers. For example, on October 9, 2019, VIZIO sent emails to each of the manufacturers following up on its September 24, 2019 demands and emphasizing the need for the immediate production of documents. *See* Exs. 19-24. In particular, VIZIO's correspondence asked each manufacturer to "please provide a date certain as to when you expect to complete the production. [REDACTED] Ex. 19 at 1; Ex. 20 at 1; Ex. 21 at 1; Ex. 22 at 1; Ex. 23 at 1; Ex. 24 at 1. VIZIO thereafter continued to correspond with the manufacturers regarding when and in what form the requested documents would be produced.

On October 28, 2019, VIZIO contacted the manufacturers yet again to request an update regarding the status of each manufacturer's production. *See* Exs. 25-29. VIZIO asked each manufacturer to "either confirm that your production is complete or provide a date by which [the manufacturer] intends to complete its production." Ex. 25 at 1; Ex. 26 at 1; Ex. 27 at 1; Ex. 28 at 1; Ex. 29 at 1. VIZIO again continued to correspond with the manufacturers thereafter regarding when and in what form the requested documents would be produced.

On October 29, 2019, and without any prior notice to VIZIO, Polaris contacted each of VIZIO's manufacturers directly to demand that a wide range of new document requests be addressed. *See* Exs. 30-35. In an effort to avoid a dispute, VIZIO copied of each of Polaris's new requests verbatim into a letter and sent that letter to each of its manufacturers on November 7, 2019. *See* Exs. 36-41.

VIZIO's letter demanded that each manufacturer produce all documents responsive to Polaris's new requests by no later than November 11, 2019 to the extent they had not already been produced. Ex. 36 at 2; Ex. 37 at 2; Ex. 38 at 2; Ex. 39 at 2; Ex. 40 at 2; Ex. 41 at 2.

In response to VIZIO's repeated demands, the manufacturers have produced tens of thousands of documents. To be clear, the documents are specifically of the type Polaris has requested, including as follows:

| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
|---|---|---|---|---|
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |

[redacted]

As the manufacturers have produced documents, Polaris has tried to claim that certain documents are "missing" from the productions. For example, on October 29-30, without notice to VIZIO, Polaris contacted each of the manufacturers and threatened to file motions to compel against each of them and VIZIO. *See e.g.*, Exs. 30-35. For their part, the manufacturers responded to Polaris's threatened motion by indicating that they had already produced the requested documents or expected to do so shortly. *See* Exs. 69-73, 75.

On November 4, 2019, a full month before Polaris filed this Motion, the parties met and conferred regarding the Motion.[2] During the meet-and-confer, VIZIO reiterated to Polaris that it had requested that the manufacturers produce all of the documents within their possession relating to the accused products and noted that the manufacturers were actively producing documents. VIZIO also invited Polaris to identify any further actions that Polaris felt VIZIO should take to avoid the present dispute, including an identification of any categories of documents missing or any manufacturers that Polaris believed were not complying with VIZIO's demands. Polaris did not identify any such steps and, a month later, filed the present motion.

---

[2] Counsel for both parties attended a Scheduling Conference earlier that morning and VIZIO proposed that the parties conduct their meet-and-confer in person afterwards in the hopes that this would promote resolution without the need for motion practice. Freeman Decl. at ¶ 2. Polaris declined this invitation and instead participated in the meet-and-confer via conference call. *Id.*

# II. ARGUMENT

## A. VIZIO Has Fully and Faithfully Complied with the Court's Order

The Court's Order stated that "[w]ithin 10 days of this order, VIZIO shall demand that its Suppliers produce the documents." Dkt. 121 at 5. As set forth above, VIZIO demanded the documents from its manufacturers five days after issuance of the Court's Order and, in response to those demands, has received tens of thousands of documents, all of which have been immediately provided to Polaris. Recognizing that this is precisely what the Court envisioned would happen, Polaris tries to distort the record by mischaracterizing VIZIO's demands, the Court's Order, and the resulting production by the manufacturers.

For example, Polaris asserts that VIZIO has only "requested some documents about some models" (Mot. at 10-11) but that is plainly untrue. VIZIO's letters (which Polaris did not attach in full to its Motion) stated that "[t]he accused products are all D-Series, E-Series, M-Series, P-Series, and P-Series Quantum televisions or displays manufactured for VIZIO from September 4, 2012 to the present day" and demanded that "all specifications, schematics, source code, bills of materials, data sheets, service manuals, and circuit diagrams associated, in any way, with the accused products" be immediately produced. *See* Exs. 1-6. Thus, VIZIO clearly requested all documents regarding all models, not "some documents about some models" as Polaris claims. Indeed, in Exhibit 74, VIZIO has a compiled list of the specific models for which VIZIO has demanded production from the manufacturers from the demand letters, along with the manufacturer from whom it was demanded. *See* also Exs. 13-18. Indeed, VIZIO has requested that the manufacturers provide documents for all models at issue in this case.

Nor is Polaris at all correct in claiming that VIZIO's demands were "half-hearted" or "lukewarm." Mot. at 1, 9. Within five days of the Court's Order, VIZIO provided a copy of the Court's Order to each of its manufacturers and informed them, in no uncertain terms, that "VIZIO is obligated by law to comply

with the Court's Order and expects [its manufacturers] to comply with this request." [REDACTED] And VIZIO has followed up with each manufacturer reiterating these demands multiple times. *See* Exs. 7-29. Nothing about VIZIO's demands have been "lukewarm" in any sense of the word. But regardless of how Polaris characterizes the wording of the demands, the result is what is important: the manufacturers have responded to VIZIO's demands by producing the requested documents and none have refused to comply.

Polaris's claim that VIZIO has "altered its requests so many times – without explanation – that it is unclear to both Polaris and the Suppliers what VIZIO is requesting" (Mot. at 11) is similarly baseless. First, VIZIO has never "altered its demands" as it has consistently demanded all documents associated with all models. Indeed, the only "alteration" was in fact when VIZIO further clarified the scope of its demand to the manufacturers based on new requests from Polaris. On October 29, ***Polaris*** made new document requests, which VIZIO subsequently copied, verbatim, into formal demand letters that it then immediately sent to its manufacturers. *See* Exs. 30-35. Polaris cannot have it both ways by making *new* demands to VIZIO and the manufacturers and then accusing VIZIO of improperly "altering" its requests by making those same demands to the manufacturers. Second, there is ***no*** evidence the manufacturers are confused, and Polaris is talking to them directly as part of this process without VIZIO present—to which VIZIO has not objected to in any way, despite the potential that ***Polaris*** may be confusing the issues.

Finally, to the extent Polaris argues on Reply that it believes certain documents to be "missing" from the production, the Court should not credit that claim. As set forth above, VIZIO has not limited its demand for documents in any way and has demanded all documents for all accused models. Those demands have resulted in the production of tens of thousands of documents. Indeed, nearly all of the manufacturers have expressly stated that they have searched for and produced the responsive documents within their possession. *See* Exs. 69-73. Moreover, the manufacturers are actively working with and responding to Polaris when Polaris makes claims (often baseless) of deficiencies. [redacted] To the extent Polaris claims that there are "deficiencies" or "missing documents," it is simply speculating and has no basis to make such claims.

In short, the undisputed record reflects that VIZIO has fully complied with the Court's Order by demanding the production of all documents for all accused products, following up with the manufacturers numerous times, and thereafter receiving and producing tens of thousands of responsive documents.

### B. The Court Should Ignore Polaris's Mischaracterizations and Misleading Statements Regarding the State of Discovery

Finally, Polaris devotes a significant portion of its Motion to misrepresenting the state of discovery at large. While Polaris's mischaracterizations are largely irrelevant to the issue of VIZIO's compliance with the Court's September 19, 2019 Order, VIZIO briefly responds to each argument here so that the Court is aware of the facts.

First, Polaris repeatedly claims that VIZIO has somehow "concealed" its relationship with its manufacturers but that argument is specious. VIZIO explicitly disclosed its manufacturers to Polaris almost a year ago on January 31, 2019 as part of its Initial Disclosures and stated, therein, [REDACTED] But, not only has that been public knowledge since well before this case was filed, it is also entirely irrelevant to this Motion. Pursuant to the Court's Order, VIZIO has timely demanded and produced the documents. That *some* of the manufacturers have a minority interest in VIZIO does not suddenly create some additional level of control. Indeed, the law is to the contrary. *See e.g.*, *Noaimi v. Zaid*, 283 F.R.D. 639, 642 (D. Kan. 2012) ("[T]his court is not persuaded that merely being a stockholder or officer of a corporation satisfies the 'control' standard set forth in Fed.R.Civ.P. 34(a)(1)."); *Am. Maplan Corp. v. Heilmayr*, 203 F.R.D. 499, 502 (D. Kans. 2001) (rejecting argument that minority owner status had bearing on question of control). These three manufacturers are entirely separate entities. The Court should ignore Polaris's misleading rhetoric here.

Second, Polaris goes to great lengths in its Motion to mischaracterize VIZIO's discovery conduct in this case as "grossly improper conduct" that has "severely prejudiced Polaris." Mot. at 12. But that claim is similarly specious. Months ago, VIZIO began producing and has since produced tens of thousands of documents responsive to Polaris's requests. To date, VIZIO has produced 25,631

documents (totaling close to 150,000 pages of materials) including, for example, [redacted] Representative examples of each of these categories of documents is attached hereto as Exhibits 77 through 83.

Undeterred, Polaris points to its three motions to compel that it has filed before Judge McCormick as being evidence of "VIZIO's knowing and grossly improper conduct and delay." Mot. at 8. But Polaris makes no mention of the fact that Judge McCormick has already ***denied*** two out of the three motions that Polaris has filed. And with respect to Polaris's third motion, which concerns an identification of the accused features, Judge McCormick has ordered ***Polaris*** – not VIZIO – to identify any alleged deficiencies and work cooperatively with VIZIO to address them. VIZIO made that same request to Polaris *weeks* ago yet Polaris provided this information only after being *ordered* to do so by Magistrate McCormick. After Polaris finally identified those alleged deficiencies, VIZIO was able to quickly resolve the remaining issues and has provided all of the information requested by Polaris. *See* Ex. 84 (identifying the relevant features).

## III. <u>CONCLUSION</u>

Since receiving the Court's September 19, 2019 Order, VIZIO has worked tirelessly to not only demand the documents from its manufacturers, but also to actually obtain them and produce them for use in this case. And VIZIO's efforts have been successful, with tens of thousands of documents now having been

produced and source code being made available for inspection. Polaris's Motion concedes these facts and, accordingly, should be denied.

DATED: December 16, 2019 Respectfully submitted,

By *<u>/s/ Richard W. Erwine</u>*
/s/ Richard W. Erwine

Attorney for Defendant VIZIO, Inc.