QUINN EMANUEL URQUHART & SULLIVAN LLP
Zachariah Summers (SBN 255284)
zachsummers@quinnemanuel.com
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Raymond N. Nimrod (admitted *pro hac vice*)
raynimrod@quinnemanuel.com
Richard W. Erwine (admitted *pro hac vice*)
richarderwine@quinnemanuel.com
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

***Attorneys for Defendant VIZIO, INC.***

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| POLARIS POWERLED TECHNOLOGIES, LLC<br><br>                    Plaintiff,<br><br>        v.<br><br>VIZIO, INC.<br><br>                    Defendant. | Case No. 8:18-cv-01571-JVS-DFM<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT VIZIO, INC. FOR AN "EXCEPTIONAL" CASE DETERMINATION UNDER 35 U.S.C. § 285 AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:  October 19, 2020<br><br>Time:  1:30 p.m.<br><br>Place:  --<br><br>Judge:  Honorable James V. Selna |

# NOTICE OF MOTION

**TO THE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that at the above time and place, Defendant VIZIO, Inc. ("VIZIO") will and hereby does move the Court to find that this case is "exceptional" within the meaning of 35 U.S.C. § 285 and award VIZIO its reasonable attorneys' fees.

This Motion is made following multiple exchanges of correspondence between the parties as well as the conference of counsel pursuant to L.R. 7-3 which took place on September 1, 2020. Polaris stated that it opposes the relief sought in this Motion.

This Motion is based on this Notice of Motion, the following memorandum of points and authorities, any accompanying declarations and exhibits, all materials incorporated or relied upon in it, any opposition or reply briefs submitted in connection with this Motion, matters of which this Court may take judicial notice, and any and all other materials the Court deems proper.

DATED: September 8, 2020         Respectfully submitted,


By  */s/ Zachariah Summers*
     /s/ Zachariah Summers

Attorney for Defendant VIZIO, Inc.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION .................................................................................... 1

II.   APPLICABLE LAW ............................................................................... 3

III.  ARGUMENT ......................................................................................... 4

    A.   Polaris's Assertion of the '331 and '087 Patents Was Baseless and Weighs in Favor of Finding This Case Exceptional ....................... 4

    1.   Background Relating to the '331 and '087 Patents ........................ 4

    2.   Polaris Dropped the '331 Patent Without Presenting Any Colorable Theory or Evidence of Infringement, Demonstrating the Substantive Weakness of Its Position ................................... 5

    3.   Polaris's '087 Infringement Theory Was Baseless and Polaris Intentionally Obscured the Substantive Weakness of Its Position to Drag Out This Litigation ......................................... 7

    (a)   *The Court found Polaris's '087 infringement theory was not reasonable even under Polaris's own incorrect claim construction* ........................................................................ 7

    (b)   *VIZIO notified Polaris that its '087 infringement theory was frivolous yet Polaris pursued it in bad faith* ......................... 9

    B.   Polaris Concealed Its Baseless '117 Infringement Theory ............... 11

    C.   Polaris Concealed Its Damages Theories, Further Increasing VIZIO's Burden in Litigating This Case ...................................... 14

    D.   VIZIO's Statement of a Fair Estimate of the Amount Sought ............ 16

IV.   CONCLUSION ................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

## CASES

*Andersen Mfg. Inc. v. Wyers Prod. Grp., Inc.*,
 2019 WL 4007772 (D. Colo. 2019) ...............................................................11

*Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*,
 79 F. Supp. 3d 1111 (C.D. Cal. 2015)..............................................................3

*Dzinesquare, Inc. v. Armano Luxury Alloys, Inc., et al.*,
 2015 U.S. Dist. LEXIS 178443 (C.D. Cal. April 1, 2015) ..............................6

*Eltech Sys. Corp. v. PPG Indus.*,
 903 F.2d 805 (Fed. Cir. 1990) .........................................................................11

*Eon-Net LP v. Flagstar Bancorp.*,
 653 F.3d 1314 (Fed. Cir. 2011) .......................................................................11

*Fogerty v. Fantasy, Inc.*,
 510 U.S. 517 (1994) ...........................................................................................4

*Giesecke & Devrient GmbH v. United States*,
 146 Fed. Cl. 631 (2020)............................................................................1, 5, 7

*Ira Pazandeh v. Yamaha Corp. of Am.*,
 No. 8:16-cv-01849-JVS-DFM (C.D. Cal. Dec. 4, 2017) (No. 72-1) ..........6, 13

*Kilopass Tech., Inc. v. Sidense Corp.*,
 738 F.3d 1302 (Fed. Cir. 2013).........................................................................3

*Kilopass Tech., Inc. v. Sidense Corp.*,
 2014 WL 3956703 (N.D. Cal. Aug. 12, 2014) ...............................................13

*Kirtsaeng v. John Wiley & Sons, Inc.*,
 136 S. Ct. 1979 (2016) .....................................................................................12

*Lakim Indus., Inc. v. Linzer Prod. Corp.*,
 2013 WL 1767799 (C.D. Cal. 2013)................................................2, 8, 11, 16

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
 726 F.3d 1359 (Fed. Cir. 2013) .......................................................................12

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
 134 S. Ct. 1749 (2014) ...............................................................................*passim*

*Phigenix, Inc. v. Genentech, Inc.*,
 2018 WL 3845998 (N.D. Cal. 2018) ...............................................................13

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*,
 858 F.3d 1383 (Fed. Cir. 2017).........................................................................6

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
   726 F.3d 1306 (Fed. Cir. 2013) ....................................................................... 11

*WPEM, LLC v. SOTI Inc.*,
   2020 WL 555545 (E.D. Tex. 2020) ................................................................... 6


## STATUTES

35 U.S.C. § 285 ........................................................................................ 1, 3, 6, 16


## RULES

Fed. R. Civ. P. 11 ................................................................................................ *passim*

Fed. R. Civ. P. 26 ....................................................................................................... 14

Fed. R. Civ. P. 33 ....................................................................................................... 14

Fed. R. Civ. P. 54(d)(2)(B)(iii) ................................................................................ 16

Fed. R. Civ. P. 54(d)(2)(C) ................................................................................. 4, 16

## I.    INTRODUCTION

Defendant VIZIO, Inc. ("VIZIO") moves the Court to find that this case is "exceptional" within the meaning of 35 U.S.C. § 285 and award VIZIO its attorneys' fees.  Plaintiff Polaris PowerLED Technologies, LLC ("Polaris") initially asserted three patents in this matter:  U.S. Patent Nos. 7,239,087 (the "'087 patent"); 8,223,117 (the "'117 patent"); and 8,843,331 (the "'331 patent").  Polaris took substantively baseless positions as to each of the patents it asserted in this case.  Polaris then hid the weakness of its positions by engaging in litigation misconduct so significant that its infringement theory for the '117 patent and its damages theory for the '087 patent were both struck, terminating infringement for the '117 and "gut[ting]" its remaining damages case. Dkt. 387 at 1.  Despite unreasonable litigation misconduct that strained VIZIO's resources as well as those of the Court, VIZIO ultimately prevailed as to all three patents.  This case stands far out from "mine-run cases" "with respect to the substantive strength of a [Polaris's] litigating position… [as well as] the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1755-56 (2014).  VIZIO is thus entitled to recover its attorneys' fees.

First, as to the '331 and '087 patents, VIZIO served a Rule 11 motion on Polaris early in this case challenging Polaris's baseless infringement theories for those patents.  Polaris dropped the '331 patent soon thereafter without bringing forward any colorable theory of infringement or responsive evidence of a sufficient pre-suit investigation, demonstrating its assertion of that patent was frivolous.  That Polaris dropped a patent so quickly underlines this case's "exceptionality, in that it did not take much development of a record—no discovery, no trial, and no fact-finding—for [Polaris] to delete its allegation" that VIZIO infringed the '331 patent. *Giesecke & Devrient GmbH v. United States*, 146 Fed. Cl. 631, 640 (2020).

In that same Rule 11 motion, VIZIO put Polaris on notice that its infringement allegation for the '087 patent was baseless.  VIZIO specifically and plainly pointed

out, based on Polaris's own contentions as well as VIZIO's expert's evaluation, that the relevant semiconductor switches in VIZIO's accused products were coupled in parallel, not "coupled in series" as required by the asserted claims.   Given the fundamental nature of the distinction between components coupled in parallel versus in series, Polaris could have made "a perfunctory comparison of the accused device with the plain language of the claims" and determined there was no infringement. *Lakim Indus., Inc. v. Linzer Prod. Corp.*, 2013 WL 1767799, *2-*7 (C.D. Cal. 2013), *aff'd,* 552 F. App'x 989 (Fed. Cir. 2014).  Indeed, in addressing this issue at summary judgment, the Court found there was "no reasonable dispute" that the switches Polaris accused "are arranged in parallel to each other, not in series," **even under Polaris's own incorrect claim construction**.  Dkt. 467 at 10.  Instead of dropping its baseless claim, however, Polaris chose to obscure the frivolousness of its position, forcing VIZIO to incur substantial litigation costs in defending the '087 patent.  VIZIO then prevailed on summary judgment based on the same theory of non-infringement presented in its Rule 11 motion.

For the '117 patent, Polaris's abuse of the litigation process supports a finding of litigation misconduct and demonstrates the substantive weakness of Polaris's position as to that patent.  Specifically, VIZIO repeatedly sought the basis for Polaris's '117 infringement allegations throughout discovery.  Polaris hid the substance of its position, however, concealing it via contentions that cited the same lengthy list of source code files for every single limitation.  Polaris then served an expert report with a completely new mapping of the code.  The Court granted VIZIO's motion to strike Polaris's expert report given Polaris's unreasonable conduct, and Polaris thereafter stipulated to non-infringement.

Finally, Polaris obscured the basis for its enormous, baseless damages request throughout the case.  Polaris refused to provide the substance of its damages theory in discovery, which required VIZIO to move to compel disclosure.  Magistrate Judge McCormick granted VIZIO's motion, but Polaris side-stepped the Court's order and

continued to withhold the requested information, particularly for the '087 patent, thereby obscuring the weakness of its demand.  Polaris then served an expert report with an entirely new theory, forcing VIZIO to move to strike.  The Court struck the core of Polaris's '087 damages theory based on Polaris's unreasonable failure to disclose, "gut[ting]" the theory according to Polaris—but only after VIZIO was required to engage in substantial motion practice to address Polaris's misconduct.

In sum, throughout this case, Polaris pursued baseless allegations and engaged in litigation misconduct that hid the substantive weakness of its positions.  To defend itself against these frivolous allegations and Polaris's enormous damages request, VIZIO was required to incur substantial litigation costs.  VIZIO now respectfully asks the Court to find that this is an exceptional case and award VIZIO its attorneys' fees.

## II.    APPLICABLE LAW

Under 35 U.S.C. § 285, a Court may award the prevailing party in a patent case its attorneys' fees if the case is shown to be exceptional.  *Octane Fitness*, 134 S. Ct. at 1755-56.  Section 285 is intended to compensate an accused infringer for its fees, as well as to deter patentees from pursuing and continuing baseless suits.  *See Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed. Cir. 2013) ("the aim of § 285 is to compensate a defendant for attorneys' fees it should not have been forced to incur").  "Section 285 discourages certain 'exceptional' conduct by imposing the cost of bad decisions on the decision maker."  *Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, 79 F. Supp. 3d 1111, 1114 (C.D. Cal. 2015).

A patent case is "exceptional" if it "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness*, 134 S. Ct. at 1756.  This determination is made on a case-by-case basis, "considering the totality of the circumstances."  *Id*.

No particular test or formula applies.  *Id*.  Nonexclusive factors that the Court can consider include "'frivolousness, motivation, objective unreasonableness (both in

the factual and legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id*. at 1756 n.6 (*quoting Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).  Further, "[a] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id*.  Sanctionable conduct under Fed. R. Civ. P. 11 is not the benchmark because "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id*. at 1756-57.

Courts apply a preponderance of the evidence standard in determining whether the moving party has shown it is entitled to fees.  *Id*. at 1758.  Fed. R. Civ. P. 54(d)(2)(C) provides that "[t]he court may decide issues of liability for fees before receiving submissions on the value of services."

## III.   ARGUMENT

### A.   Polaris's Assertion of the '331 and '087 Patents Was Baseless and Weighs in Favor of Finding This Case Exceptional

Polaris never had a reasonable basis for asserting infringement of the '331 and '087 patents in this matter.  As demonstrated below, its assertion of those patents was unsound, its positions lacked any substantive strength, and Polaris was fully aware of the substantial evidence showing non-infringement from the outset of the case.  The Court should find Polaris's baseless and unreasonable assertion of both patents weighs in favor of declaring this an exceptional case under Section 285.

#### 1.   Background Relating to the '331 and '087 Patents

Starting at the January 28, 2019 scheduling conference and continuing in detailed letters and meet-and-confers, VIZIO explained repeatedly to Polaris that its infringement allegations as to the '331 and '087 patents were baseless.  *See, e.g.*, Dkt. 74-3 (1/28/19 Tr.) at 9:8-15, 10:5-8; Dkt. 74-4 (2/27/19 letter); Ex. 74-5 (4/18/19 letter); Dkt. 74-6 (7/3/19 letter (serving Rule 11 motion)).

In particular, on April 18, 2019, VIZIO sent a letter to Polaris identifying the deficiencies in Polaris's infringement allegations as to both the '331 and '087 patents. Dkt. 74-5. VIZIO explained why Polaris had no basis for its infringement allegations and why the evidence cited by Polaris in fact demonstrated non-infringement. *Id*. VIZIO expressly stated its position that Polaris had "no basis to assert those patents against VIZIO and Polaris must withdraw those patents immediately. Otherwise VIZIO intends to move to strike those contentions and potentially seek sanctions pursuant to FRCP Rule 11, along with attorneys' fees and costs." *Id.* at 1.

After Polaris initially refused to withdraw the patents, on July 3, 2019, VIZIO served a Rule 11 motion on Polaris. Dkt. 74-6. VIZIO's motion followed up on its April 18th letter and attached a declaration from an expert and a review of the evidence that showed VIZIO's televisions did not infringe the '331 and '087 patents.

### 2. Polaris Dropped the '331 Patent Without Presenting Any Colorable Theory or Evidence of Infringement, Demonstrating the Substantive Weakness of Its Position

In response to VIZIO's Rule 11 motion, Polaris did not come forward with any evidence of a sufficient pre- or post-suit investigation as to the '331 patent or any basis for asserting infringement against VIZIO's products. Instead, Polaris's litigation position was so weak—without any basis in a reasonable analysis of the accused VIZIO products—that Polaris immediately dropped the '331 patent, pretextually claiming it was doing so "in the interest of narrowing issues and disputes in the case." Dkt. 75-12.

Polaris's decision to immediately drop the '331 patent is direct evidence of Polaris's "exceptionally meritless claims" that set this case "apart from mine-run cases to warrant a fee award." *Octane Fitness,* 134 S. Ct. at 1756; *see also Giesecke*, 146 Fed. Cl. at 640 (finding that where patentee dismissed a patent in "early stages of litigation" in response to a Rule 11 letter, case was properly found exceptional). Polaris unreasonably and baselessly asserted infringement of the '331 patent and, when challenged, did not come forward with ***any*** colorable theory of infringement or

evidence to support its '331 patent infringement allegations or to show it conducted a reasonable analysis of VIZIO's products.

This case is thus analogous to *Dzinesquare, Inc. v. Armano Luxury Alloys, Inc., et al.*, 2:14-cv-01918-JVS-JCG, 2015 U.S. Dist. LEXIS 178443 (C.D. Cal. April 1, 2015) (No. 61). In that case, this Court found that a patentee who "provided no evidentiary support" to rebut the defendant's invalidity motion engaged in exceptional litigation behavior. *Id*. at *6. The Court reasoned that "such a weak litigating position is alone sufficient to conclude that [the patentee]'s patent infringement claim 'stands out from others and is an exceptional case meriting attorneys' fees under 35 U.S.C. § 285." *Id*. at *7. Similarly, in *Ira Pazandeh v. Yamaha Corp. of Am.,* No. 8:16-cv-01849-JVS-DFM (C.D. Cal. Dec. 4, 2017) (No. 72-1), this Court found that a patentee's failure to conduct a pre-suit analysis such that it could not come forward with evidence of infringement "weigh[ed] in favor of a finding that [the] case is exceptional." *Id*. at 4.

Though Polaris avoided Rule 11 sanctions by dropping the '331 patent during the safe harbor period, that does not insulate it from an award of fees under Section 285. As the Supreme Court explained in *Octane Fitness*, sanctionable conduct under Rule 11 is not the benchmark because "a party's unreasonable conduct—while not necessarily independently sanctionable—[can be] nonetheless so 'exceptional' as to justify an award of fees." *Octane Fitness,* 134 S. Ct. at 1756-57. And the Federal Circuit has explicitly held that it is an error of law to find that dropping a patent within the safe-harbor period of Rule 11 insulates a patentee from an attorneys' fee award under Section 285. *See Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1390 (Fed. Cir. 2017) ("The District Court erred as a matter of law when, as part of its analysis, it stated that an attorney fee award under § 285 would 'contravene[ ] the aims of Rule 11['s]' safe-harbor provision."); *see also WPEM, LLC v. SOTI Inc.,* 2020 WL 555545, *3-*8 (E.D. Tex. 2020) (awarding

accused infringer Section 285 fees where patentee voluntarily dismissed its infringement claims with prejudice after having been served with a Rule 11 letter).

Here, Polaris unreasonably and baselessly asserted infringement of the '331 patent.  Polaris **never** had a basis to bring an allegation of infringement against VIZIO, and VIZIO should never have been required to prepare a defense or draft a Rule 11 motion as to that patent in the first place.  Dropping a patent so quickly demonstrates that Polaris's litigation positions in this case were substantially weaker than the traditional "mine-run" cases and "contributes to [this case's] exceptionality, in that it did not take much development of a record—no discovery, no trial, and no fact-finding—for [Polaris] to delete its allegation" that VIZIO infringed the '331 patent.  *Giesecke*, 146 Fed. Cl. at 640.  The Court should thus find Polaris's assertion of the '331 patent supports finding this is an exceptional case.

### 3. Polaris's '087 Infringement Theory Was Baseless and Polaris Intentionally Obscured the Substantive Weakness of Its Position to Drag Out This Litigation

Polaris engaged in similarly unreasonable behavior as to the '087 patent, and its conduct likewise weighs in favor of a finding that this case is exceptional and awarding VIZIO its reasonable attorneys' fees.  Polaris's infringement theory was not reasonable even under its own incorrect claim construction of "coupled in series," and Polaris was aware that its theory was baseless from the start of this litigation.

        (a)    *The Court found Polaris's '087 infringement theory was not reasonable even under Polaris's own incorrect claim construction*

The asserted claims of the '087 patent require a "network of semiconductor switches coupled in series."  As the Court found in its Order on VIZIO's summary judgment motion, however, "there is no reasonable dispute" that the switches Polaris accused in VIZIO's products "are arranged in parallel to each other, not in series."  Dkt. 468-1 at 10.  Polaris's entire infringement theory for the '087 patent was premised on ignoring a fundamental distinction—between switches coupled ***in***

*parallel* (as in VIZIO products) and switches coupled *in series* (as expressly required by the '087 patent claims).  This position was objectively baseless.

The Court found that there was no reasonable dispute that VIZIO's products do not infringe even under Polaris's own construction of the term "coupled in series" (a construction which the Court rejected):

> Polaris has not shown that the collection of switches is indeed "coupled in series," including under Polaris' assertion that "coupled in series" requires that current must flow sequentially through the connected switches in the network. In the arrangement shown in Polaris' annotated figure, ***there is no reasonable dispute that Switches B are arranged in parallel to each other, not in series,*** such that current does not flow sequentially from one Switch B to another.

*Id.* at 10 (emphasis added).  Thus Polaris never had—even under its own incorrect construction of "coupled in series"—a reasonable basis for asserting that VIZIO's products infringed.

By asserting an objectively baseless infringement theory that ignored the fundamental distinction between components "coupled in parallel" versus "coupled in series," Polaris took a litigation position much like the one found to support an award of fees in *Lakim Industries, Inc. v. Linzer Products Corp.*, 2013 WL 1767799, *2-7 (C.D. Cal. 2013).  There, the plaintiff could have confirmed non-infringement "through a perfunctory comparison of the accused device with the plain language of the claims" because "[t]he claim language required nothing more than application of the widely accepted meaning of commonly understood words" (there, the term "paint roller"; here, "coupled in series") to determine non-infringement.  *Id.* at *7, *3.  The Court thus found that "[g]iven the clear claim limitations, no objectively reasonable litigant would believe it could succeed on a literal infringement claim" and found the case exceptional.  *Id.* at *7.

Polaris demonstrated the same lack of objective reasonableness as did the plaintiff in *Lakim*.  As the Court found in its summary judgment Order, there is no reasonable dispute that the switches Polaris accused "are arranged in parallel to each

other, not in series." Dkt. 468-1 at 10. Yet Polaris chose to ignore this fundamental distinction, and the claim language itself, to advance a frivolous theory of infringement.

The lack of any substantive strength to Polaris's assertion of the '087 patent is sufficient by itself to support an exceptional case finding. *Octane Fitness* makes clear that an "exceptionally meritless claim" warrants a fee award, and there is no requirement to also show subjective bad faith. *Octane Fitness*, 572 U.S. at 555. Here, however, there is also unequivocal evidence that Polaris knew or should have known the baselessness of its position early in the case yet attempted to obscure that position in order to drag out this litigation. This additional evidence, while not necessary to finding this case exceptional, weighs heavily in favor of doing so.

> (b)   *VIZIO notified Polaris that its '087 infringement theory was frivolous yet Polaris pursued it in bad faith*

As noted above, VIZIO's April 28, 2019 letter and subsequent Rule 11 motion spotlighted the fact that the switches in VIZIO's televisions were coupled in parallel, not series—the exact ground on which the Court granted summary judgment of non-infringement. As VIZIO wrote in its April 28th, 2019 letter:

> Claim 1 requires "a network of semiconductor switches coupled in series." Polaris provides no evidence that would show that any of the alleged semiconductor switches are "coupled in series." Instead, Polaris simply concludes, without support, that this must be the case. See Exhibit A, p. 5. Making matters worse, the very screenshot that Polaris included for this limitation appears to show that the alleged semiconductor switches are coupled in parallel, not in series….

Dkt. 74-5 at 4 (including an annotated screenshot from Polaris's contentions showing why the relevant switches were wired in parallel).[1]

Similarly, in its subsequent Rule 11 motion, VIZIO wrote that "for the claim element requiring 'a network of semiconductor switches coupled *in series*,' Polaris

---

[1] VIZIO told Polaris of its intention to seek fees in that letter. *Id*. at 1.

identifies a collection of switches that are connected *in parallel*," (Dkt. 74 at 7 (emphasis in original)) and further explained that the evidence relied on by Polaris "plainly shows each switch coupled in parallel, the opposite of being coupled in series as required" because "there are multiple paths" between them. Dkt. 74 at 8. VIZIO included additional evidence in support of this point, including its experts' independent inspection of the accused VIZIO televisions. *Id*. As VIZIO told Polaris at that time, "[a]ccusing switches coupled in parallel in the VIZIO televisions—despite the '087 patent's claims being expressly limited to switches coupled in series—is objectively baseless and unreasonable." *Id*. at 14.

Instead of dropping the '087 patent in response to VIZIO's Rule 11 motion, however, Polaris chose to obscure its infringement theory as much as possible in an effort to proceed with the case. Days before the end of the Rule 11 safe harbor period, Polaris served purportedly "supplemental" infringement contentions asserting new theories of infringement. *See* Dkt. 77 at 8-17. Polaris then claimed throughout its Opposition that "VIZIO grossly misrepresents Polaris' infringement theory" and "points at certain parallel switches in its televisions that Polaris never claimed are coupled in series," and even that VIZIO itself allegedly knew "that Polaris has throughout based its infringement assertion on switches in VIZIO's televisions that are, in fact, coupled in series, not the parallel switches that VIZIO's entire motion is premised upon." Dkt. 75 at 1-2.[2]

The truth ultimately came out. Polaris was in fact accusing switches coupled in parallel—as the Court found in ruling on VIZIO's summary judgment motion—and even under Polaris's own interpretation of the phrase "coupled in series" there

---

[2] The Court did not ultimately address the merits of Polaris's infringement theory in ruling on VIZIO's Rule 11 motion. Dkt. 85 at 6-7 ("[w]hether Polaris's infringement theories ultimately fail on the merits is irrelevant at this stage of the proceedings….").

1  was "no reasonable dispute" that the relevant switches were "arranged in parallel to

2  each other, not in series."  Dkt. 468-1 at 10.

3       Polaris, on full notice of this clear, indisputable evidence of non-infringement

4  very early in the case, decided to press forward with its frivolous assertion of the '087

5  patent without "paus[ing] to further investigate whether its positions were legally

6  tenable."  *Lakim Indus.*, 2013 WL 1767799, at *2-7 (where accused infringer brought

7  early motion regarding non-infringement, finding subjective bad faith to continue

8  pursuing baseless theory).

9       This demonstrates bad faith and is precisely the type of "exceptional conduct"

10 that Section 285 is intended to remedy.  *See Eltech Sys. Corp. v. PPG Indus.*, 903 F.2d

11 805, 811 (Fed. Cir. 1990) ("Where, as here, the patentee is manifestly unreasonable

12 in assessing infringement, while continuing to assert infringement in court, an

13 inference is proper of bad faith...");  *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726

14 F.3d 1306, 1328 (Fed. Cir. 2013) (establishing rule "that a case can be found

15 exceptional when a party prolongs litigation in bad faith");  *Andersen Mfg. Inc. v.*

16 *Wyers Prod. Grp., Inc.*, 2019 WL 4007772, *6-*12 (D. Colo. 2019) (court weighing

17 patentee's knowledge of non-infringement position, which prevailed at summary

18 judgment, in favor of finding of an exceptional case).

19      Polaris—a non-practicing entity immune from any significant risk in bringing

20 the suit here—decided to let its "appetite for licensing revenue… overpower [its]

21 obligation to file cases reasonably based in law and fact and to litigate those cases in

22 good faith."  *Eon-Net LP v. Flagstar Bancorp.*, 653 F.3d 1314, 1327-28 (Fed. Cir.

23 2011).  The Court should find Polaris's baseless assertion of the '087 patent weighs

24 in favor of finding that this is an exceptional case warranting an award of fees.

25      **B.    Polaris Concealed Its Baseless '117 Infringement Theory**

26      Polaris's assertion of the '117 patent ended with a Joint Stipulation for an Order

27 of Non-Infringement.  Dkt. 412.  That is because Polaris withheld its infringement

28 theories throughout discovery, insulating their weakness from scrutiny, but resulting

in the Court striking much of Polaris's expert infringement analysis.  Polaris thereafter stipulated to non-infringement, as it represented to the Court that the Court's Order "terminate[d] infringement of the '117 patent."  Dkt. 387 at 1; Dkt. 412.

Specifically, although Polaris amended its infringement contentions at multiple points in the litigation, it was not until Polaris served its expert report for the '117 patent that it disclosed a number of significant theories, identifying for the first time specific source code functions and variables for various limitations (and dependent claims) of the '117 patent.  *See* Dkts. 362; 377.  Polaris chose to hide the weakness of these theories in its earlier infringement contentions by citing the ***exact same*** 8-page list of source code file names for every single limitation and dependent claim in the case.  Dkt. 406 at 5.  In its contentions, Polaris did not identify the name of numerous functions, variables, and equations from those its expert ultimately contended met specific individual limitations of the '117 patent.

Accordingly, on April 6, 2020, VIZIO moved to strike the portions of Polaris's expert's report disclosing these new theories and new source code analysis.  On May 14, 2020, the Court granted VIZIO's motion to strike, finding that "Polaris's infringement contentions were deficient" because "[c]iting to the same lengthy list of source code for each claim limitation did not explicitly disclose Polaris' actual infringement theories and provide VIZIO of notice of what they are."  *Id.* at 6.  Because Polaris acknowledged it could "not establish that the accused products of VIZIO infringe the '117 patent" in view of the Court's May 14 Order, the parties stipulated to non-infringement.

"[L]itigation misconduct alone may suffice to make a case exceptional."  *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1366 (Fed. Cir. 2013); *see also Kirtsaeng v. John Wiley & Sons, Inc.,* 136 S. Ct. 1979, 1988-89 (2016) ("[A] court may order fee-shifting because of a party's litigation misconduct, whatever the reasonableness of his claims or defenses.").  For instance, in *Monolithic Power Systems*, the Federal Circuit upheld a district court's award of fees to the accused

infringer even where the patentee defeated a motion for non-infringement, noting it is a "well-established rule" that litigation misconduct can, alone, render a case exceptional.  *Id*. at 1367-68.   As the Federal Circuit explained, "[a]dditional components are simply not required for an exceptional case finding based on litigation misconduct."  *Id*. at 1368.  Here, given Polaris's gamesmanship in hiding its '117 infringement theories, the Court need go no further and may conclude that Polaris's litigation misconduct as to the '117 patent weighs in favor of a finding that this is an exceptional case.

Even though Polaris's misconduct is alone sufficient here, however, the Court may also treat Polaris's actions as evidence of the substantive weakness of Polaris's litigation position as to the '117 patent as well.  Put simply, there was no reason for Polaris to engage in gamesmanship as to the '117 patent unless it was seeking to hide the weakness of its affirmative positions.

It is common for courts to treat late disclosure of an infringement theory as both unreasonable litigation misconduct and as evidence of the substantive weakness of a litigant's position, both of which support a finding that a case is "exceptional."  For instance, in *Kilopass Tech. Inc. v. Sidense Corp.*, 2014 WL 3956703 (N.D. Cal. Aug. 12, 2014), the patentee filed an expert report on infringement asserting a new theory under the doctrine of equivalents.  *Id*. at *7.  The district court subsequently granted summary judgment to the defendant based on the patentee's failure to disclose its theories earlier, and the defendant moved for a finding that the case was exceptional. The district court reasoned both that the patentee's decision to disclose a new theory was evidence of the substantive weakness of its position (*id*. at *13) and that it showed that the patentee "litigated the present action in an unreasonable manner" (*id*. at *14).

Similarly, in *Ira Pazandeh,* No. 8:16-cv-01849-JVS-DFM (C.D. Cal. Dec. 4, 2017) (No. 72-1), this Court found that evidence showing a patentee who engaged in litigation misconduct, including advancing new theories of infringement beyond its contentions, demonstrated the patentee's "litigation positions lacked substantive

strength and were without merit," finding this "a significant factor that weighs in favor of a finding that this case is exceptional." *Id*. at 4.

Likewise, in *Phigenix, Inc. v. Genentech, Inc.*, 2018 WL 3845998, *5-8 (N.D. Cal. 2018), the court found that the plaintiff only disclosed a new theory of infringement through its expert after the close of fact discovery and failed to provide any "good reason why it failed to disclose the new theory earlier." *Id*. at *7. The court thus found that "[t]hose circumstances evince that Phigenix unreasonably manipulated its theories to postpone defeat," and further found this gamesmanship supported finding the case exceptional. *Id*.

As in these cases, Polaris chose to hide the substantive weakness of its '117 infringement theories "to postpone defeat," in clear violation of disclosure requirements. That litigation abuse supports finding this case exceptional, because it both demonstrates the "unreasonable manner in which the case was litigated" and the lack of "substantive strength" in Polaris's '117 infringement allegations.

## C.   Polaris Concealed Its Damages Theories, Further Increasing VIZIO's Burden in Litigating This Case

Polaris also engaged in litigation misconduct by withholding its damages' theories during fact discovery. This misconduct resulted in the Court striking substantial portions of Polaris's expert's damages report such that, in Polaris's own words, its '087 damages theory was "gut[ted]." Dkt. 387 at 1. It was also a significant factor in driving the costs of the litigation. As with its infringement allegations, Polaris acted far outside the "mine-run cases" by engaging in litigation misconduct to cover its substantively weak positions, confirming "the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1755-56.

Specifically, while VIZIO completed its production of financial information months before the close of fact discovery and reasonably asked, as required under Rules 26 and 33, that Polaris disclose its general theory or theories of damages during fact discovery, Polaris resisted. Ultimately, VIZIO was forced to move to compel

Polaris to disclose its damages theories.  *See* Dkt. 216.  On January 7, 2020, Magistrate Judge McCormick found that Polaris's "disclosure on this matter [of damages] is insufficient" and compelled Polaris to disclose its theories "to the best of its ability with the information currently available to it."  Dkt. 288 at 3.  On January 28, 2020, Polaris served a supplemental disclosure of its damages positions in which it set forth certain theories of damages under the *Georgia-Pacific* factors.

But when Polaris served its expert damages report on March 10, 2020, despite the Court's order to disclose its damages theories, Polaris advanced an entirely new and completely unfounded damages theory as to the '087 patent that it had not previously disclosed, despite being compelled to do so by Magistrate Judge McCormick.  Namely, for the '087 patent, Polaris's expert Mr. Bratic offered a new "price premium" theory of damages that appeared nowhere in Polaris's damages disclosures and was in fact contrary to the limited details Polaris provided in its compelled interrogatory response.  This price premium theory allowed Polaris to request an enormous sum in damages, but it had no basis whatsoever in reality.

On April 6, 2020, VIZIO moved again, this time to strike Polaris's new theories.  Dkt. 362.  The Court granted VIZIO's motion, finding that "Polaris's answers to VIZIO's interrogatory regarding damages did not disclose the 'price premium' theory and the figures underlying it," and that "Polaris does not provide an adequate justification for its failure to disclose this damages theory to VIZIO.  Dkt. 406 at 4.  The Court thus struck Polaris's new damages theory, which Polaris stated "gut[ted] its damages expert's opinion."  Dkt. 387 at 1.  Despite this, Polaris refused to withdraw its expert's testimony, requiring VIZIO to file a *Daubert* motion (Dkt. 408) (which was mooted by the Court's order granting summary judgment).

As with Polaris's gamesmanship as to the '117 patent, Polaris's litigation misconduct as to its '087 damages theory should be considered litigation misconduct that supports finding this case exceptional.  Polaris withheld the substantive basis for its extraordinarily high damages demand in this action in order to shield it from

evaluation.  Then, after being forced to disclose it, Polaris instead introduced its baseless "price premium" theory in its expert report in an effort to speciously justify its enormous damages demand.  Such an extraordinarily high damages demand required that VIZIO treat this litigation as a "bet the company" case, further increasing the burden on VIZIO.  Polaris's baseless damages demand and its related litigation misconduct further weighs in favor of a finding that this case is exceptional.

### D.     VIZIO's Statement of a Fair Estimate of the Amount Sought

Rule 54(d)(2)(C) of the Federal Rules of Civil Procedure provides that "[t]he court may decide issues of liability for fees before receiving submissions on the value of services." In this regard, and pursuant to Fed. R. Civ. P. 54(d)(2)(B)(iii), VIZIO states that it seeks approximately $4,266,769 in attorneys' fees.  VIZIO stands ready to submit the appropriate evidence regarding the amount of such fees upon further instruction from the Court and upon findings regarding the exceptional nature of this case and the propriety of a fee award.

## IV.   CONCLUSION

"Meritless patent litigation places a particular strain on judicial and party resources.  In recognition of this strain, Section 285 of the Patent Act gives district courts discretion to award fees to prevailing parties in qualifying cases." *Lakim Indus.*, 2013 WL 1767799, at *2-*7.

As set out above, the totality of the circumstances demonstrates that this case is exceptional within the meaning of Section 285.  Polaris took substantively baseless positions as to each of the asserted patents and engaged in litigation misconduct so significant that the Court struck its infringement theory as to the '117 patent and its "price premium" damages theory as to the '087 patent.  Polaris's baseless positions and litigation misconduct strained both VIZIO's and the Court's resources, and they set this case apart from standard "mine-run" patent infringement actions.  VIZIO thus respectfully requests that the Court find this case exceptional and determine that an award to VIZIO of its reasonable attorneys' fees is justified.

1   DATED:  September 8, 2020          Respectfully submitted,

2

3

4                                             By */s/ Zachariah Summers*

5                                                 Zachariah Summers

6                                                 Attorney for Defendants
                                                  VIZIO, Inc.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28